## In re William A. Simmons.

FILED MAY 17, 1906. No. 14,472.

Inebriates: COMMITMENT: PROCEDURE. The statute providing for the commitment of inebriates to the state hospital for the insane requires that an application "in the nature of an information" be filed with the commissioners of insanity, alleging that the person in whose behalf the application is made is a dipsomaniac or inebriate and a fit subject for treatment in the hospital. There must be a hearing upon the information, and a finding by the commissioners that the information is true. A commitment without such information and finding is void.

ORIGINAL application for a writ of habeas corpus. *Writ allowed.*

*Allen G. Fisher,* for relator.

*Norris Brown, Attorney General,* and *W. T. Thompson,* contra.

SEDGWICK, C. J.

This is an application to this court, in its original jurisdiction, for a writ of habeas corpus. The respondent,

Dr. James L. Greene, is superintendent of the hospital for the insane at Lincoln, Nebraska. In his petition the relator alleges that he is restrained of his liberty by the respondent "upon the charge that he was a person who by reason of his habits relative to the use of intoxicating liquors came within the inhibition of an act of the legislature of Nebraska enacted, signed and approved on April 4, 1905, whereby are conferred powers in relation to dipsomaniacs, etc., * * * and that he is now deprived of his liberty unlawfully by Dr. J. L. Greene, superintendent of the said hospital." The respondent filed a general demurrer to the petition of the relator. With the petition there was filed a paper purporting to be the return of a physician to the commissioners of insanity of Dawes county and the record of the proceedings of the commissioners therein; and attached to the demurrer is a paper purporting to be a copy of a commitment to the hospital for the insane. This paper is executed by C. L. Freeman, who signs himself as clerk, and shows that a seal was attached to the original. These papers were referred to by both parties in their briefs and also upon the argument, and will therefore be treated as a part of the showing in the case. From the paper which purports to give the proceedings of the commissioners of insanity of Dawes county, it appears that the commissioners examined four or five witnesses who testified "that they knew him (the relator) to be an habitual excessive user of alcoholic stimulants, and that they believed it was impossible for him to control the appetite for intoxicants. Not only they, but each member of the board has been personally acquainted with the patient for several years, knows that it is practically impossible for him to come to town without getting drunk and that he is a public nuisance when he is drunk." Then follows a statement that "it is admitted by the defense that the above facts could be established by a great number of winesses." The record then states: "The board finds him a fit subject for treatment for the liquor habit at the state hospital for the in-

sane, and imposes a sentence of two years." In the paper, which purports to be the clerk's warrant of commitment, it is said "that the said commissioners find William A. Simmons to be an inebriate, and a fit subject for custody and treatment in the hospital."

It is urged that this statement in the commitment ought to be taken as establishing an additional finding of the commissioners, but we think that it cannot be so regarded. The statute under which the proceedings were brought provides: "Applications for admission of such persons to the hospital must be made in writing in the nature of an information, verified by affidavit; such information must allege that the person in whose behalf the application is made is believed by the informant to be a dipsomaniac or inebriate or addicted to the excessive use of morphine, cocaine or other narcotic drugs and a fit subject for treatment in the hospital." Comp. St. 1905, ch. 40, sec. 64. And in section 66 it is provided: "If, upon the investigation, the commissioners shall find the information to be true, they shall impose upon the person in whose behalf the application is made, a sentence of detention in the hospital until the patient is cured, and not exceeding three years." It is also provided (section 65): "The commissioners shall hear testimony for and against such application, and the parties may be represented by counsel upon the hearing." From these provisions of the statute it appears that, when a citizen is charged with being a dipsomaniac or an inebriate, there must be a trial and findings of fact, and there must be, of course, a record of this trial and of these findings, and this record must be kept with sufficient formality to show the jurisdiction of the commissioners in the premises, and also to show the action that was taken by the commissioners upon the complaint. In order to justify the commitment of the person charged, this record must show that from the evidence the commissioners found the facts to exist that would require such commitment. This the record before us fails to do. There is no finding that the person

charged is an inebriate, and without such finding the conclusion of the commissioners that he is a fit subject for treatment in the hospital is wholly unwarranted. It would seem that the commissioners have overlooked the importance of proceedings under which a citizen is to be deprived of his liberty, and have failed to appreciate the great responsibility that is placed upon them by the statute in question.

The manner in which the case has been presented here is not such as to justify us in discussing and passing upon the various important questions that were with more or less sincerity presented upon the argument. We do not find it necessary to determine in this proceeding whether the statute in question is unconstitutional, or whether, if the statute is constitutional, the party charged must in some stage of the proceeding be allowed a trial by jury. It is said that the same proceedings are required as upon application for the commitment of an insane person. If this is granted, the question would remain whether upon an application for the commitment of a person charged with being insane such person can be wholly deprived of the right of trial by jury. Section 40, ch. 40, Comp. St. 1905, provides: "All persons confined as insane shall be entitled to the benefit of the writ of habeas corpus, and the question of insanity shall be decided at the hearing." Long before the adoption of our constitution guaranteeing the right of trial by jury, that right existed in proceedings of this nature: "If any person be, or shall be, untruly found lunatic * * * be it enacted * * * that every person and persons, grieved or to be grieved by any such office or inquisition, shall and may have his or their traverse to the same immediately or after, at his or their pleasure, and proceed to trial therein, and have like remedy and advantage as in other cases of traverse upon untrue inquisitions or offices founden." 2 Edw. VI, ch. 8, sec. 6. In some jurisdictions in this country it is held that the court may exercise a discretion in the matter of allowing a traverse of the inquisition of lunacy, so far as to ascer-

tain whether the person charged "is really desirous of a traverse and has mind enough understandingly to make such a request of the court"; but exercising such a discretion is very different from refusing a jury trial when there is reasonable doubt of insanity. How far such suggestions should be considered in construing this new statute for the detention of inebriates has not been seriously discussed in the case at bar. We do not find it to be our duty to decide them, or to do more than to suggest them here. There is not sufficient substance or regularity in these proceedings to warrant the detention of the relator.

The writ is allowed, and the relator discharged.

WRIT ALLOWED.